# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

-------------------------------------------------x

JENNY CHRISTOPHERSON,

          Plaintiff,

vs.

BETTERIDGE JEWELERS, INC.,
and PERRY JOHNSTON,

          Defendants

-------------------------------------------------x

CIVIL ACTION NO.

JURY TRIAL DEMANDED

AUGUST 21, 2014

## COMPLAINT

The Plaintiff, Jenny Christopherson, for and as her Complaint, alleges upon personal information as to her own actions and interactions, and upon information and belief as to all other matters, as follows:

## PARTIES

1. The Plaintiff is Jenny Christopherson ("Christopherson"), an individual who resides at 163 Franklin Street, Apt. 103, Stamford, Connecticut.

2. The first Defendant is Betteridge Jewelers, Inc. ("Betteridge" or the "Company"). Betteridge is a Connecticut company with a business address of 117 Greenwich Avenue, Greenwich, Connecticut. Betteridge employs more than seventy-five (75) employees and therefore is subject to Title VII of the Civil Rights Act of 1964, , 42 U.S.C. § 2000e, et seq., as amended, and the Connecticut Fair Employment Practices Act, C.G.S. §46a-60, et seq.

3.     The second Defendant is Perry Johnston ("Johnston").  Upon information and belief, Johnston is an individual who resides at 27 Greenbriar Lane, Greenwich, Connecticut.

## JURISDICTION

4.     On January 31, 2013, Christopherson filed a Complaint against Betteridge with the Connecticut Commission on Human Rights and Opportunities alleging violations of C.G.S. § 46a-60(a), *et seq*. and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., as amended, in that she was subjected to and experienced workplace harassment based on her gender, was sexually harassed by a manager of Betteridge, was forced to endure a hostile work environment, and was constructively discharged from her employment.

5.     On August 4, 2014, the Connecticut Commission on Human Rights and Opportunities issued a "Release of Jurisdiction" with regard to Christopherson's claims under the Connecticut Fair Employment Practices Act ("CFEPA").  A copy of the Release of Jurisdiction is attached hereto and made a part hereof as "Exhibit A." Accordingly, Christopherson has exhausted her administrative remedies with respect to her state statutory claims.

6.     On August 7, 2014, the Equal Employment Opportunity Commission issued a "Notice of Right to Sue" Letter with respect to Christopherson's claims under Title VII of the Civil Rights Act of 1964, as amended.  A copy of the Notice of Right to Sue Letter is attached hereto and made a part hereof as "Exhibit B." Accordingly, Christopherson has exhausted her administrative remedies with respect to her federal statutory claims

7.     This Court has subject matter jurisdiction over the federal statutory claims under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the related state claims pursuant to 28 U.S.C. § 1367.

## VENUE

8.     The District of Connecticut is the proper venue for this dispute under 28 U.S.C. § 1391(b), since a substantial part of the events and omissions giving rise to the claims occurred in this judicial district.

## FACTS

9.     Christopherson began her employment with Betteridge in September of 2011, after graduating from college and relocating from Minnesota to Connecticut in order to work at Betteridge. Her initial position with Betteridge was in web marketing and graphic design.

10.     During her employment, Christopherson was subject to sexual harassment and an abusive working environment on a continuing basis at Betteridge.

11.     Christopherson initially reported to Win Betteridge, her manager and the son of the CEO for the Company, Terry Betteridge.

12.     Win Betteridge would routinely invade Christopherson's personal space during her employment in 2011 and position himself very close to her in an inappropriate manner. For example, Win Betteridge would stand so closely behind Christopherson in her workspace that if she moved her head back even one inch, her neck would come in contact with Win Betteridge's groin.

13.    Christopherson objected to this conduct and complained about Win Betteridge on numerous occasions to Jonathan Joines ("Joines"), a web developer and part of the team at Betteridge to which Christopherson was assigned.

14.    Christopherson complained on numerous occasions that Win Betteridge made her feel uncomfortable because of how closely he would stand to her in the workplace. Win Betteridge did not conduct himself in this manner with male employees of the Company.

15.    In late November 2011, Christopherson was working on the Holiday Newsletter for Betteridge when Win Betteridge came over to view her computer screen as a pretext for invading her personal space and positioned his face adjacent to her face, almost touching. There was no reason for Win Betteridge to position himself so closely to Christopherson in order to view her computer screen as she was working on an 18 inch, back-lit screen at the time. Christopherson objected to this conduct and asked in a professional tone that Win Betteridge back away from her, which was witnessed by other employees such as Joines and Lexy Tanner ("Tanner").

16.    Win Betteridge continued to act inappropriately and became hostile towards Christopherson in the workplace in 2011 and during the following year after she objected to his conduct. He would speak down to her, refuse to answer her questions, disregard her suggestions and, in the process, treat her very differently than male employees.

17.    On June 2, 2012, Win Betteridge was struggling to come up with a new phrase for Betteridge that would appear in Google searches. Seeing that he was having difficulty with this task, Christopherson suggested to Win Betteridge that he consult with

another female employee with extensive creative writing experience, Tanner, concerning a new web marketing phrase for Betteridge. In response, Win Betteridge became visibly angry and yelled at Christopherson exclaiming that "she's not very good at it" and that "we're not going to ask her for help."

18.     During the summer of 2012, Christopherson handled a new catalog marketing initiative for Betteridge serving as manager, art director and designer for the project since Win Betteridge was offering little to no guidance. Christopherson would routinely contact Win Betteridge concerning the project but received no constructive feedback.

19.     Instead, on September 18, 2012, Win Betteridge notified Christopherson by email that she was "costing the company money" by "asking for help" and she should now assist Jonathan Joines fifty percent (50%) of the time instead of attending to her existing job duties."

20.     After receiving the email, Christopherson met with Randy LaPointe ("LaPointe"), COO of Betteridge, and spoke with Kim Lieman ("Lieman"), assistant to the CFO for Betteridge, Michael Manjos ("Manjos"). Christopherson expressed her concern to them about the email and about how she was being treated differently than her male coworkers.

21.     In response, Lieman stated that "Win hates women. If he were ever to get control of the Company, I would be the first one fired." She suggested that Christopherson speak with Manjos about the email.

22.     After meeting with LaPointe and Manjos in September of 2012, they made clear to Christopherson that neither of them would take any action to address Win Betteridge's behavior towards her.

23.     On approximately November 15, 2012, in the presence of Christopherson and other web team members, in Betteridge remarked out loud what a "bummer" it was to get interrupted while watching a "porno."

24.     Also in November of 2012, after Christopherson informed management of disparate and inappropriate treatment she received from Win Betteridge, he approached Christopherson on the sales floor after a Saturday morning meeting. Win Betteridge positioned himself close to Christopherson and placed his hands on her shoulders and back, again making her feel very uncomfortable.

25.     At this point, Win Betteridge was no longer speaking with Christopherson about work related issues and did not treat her as part of the web development team.

26.     Christopherson had a meeting with Betteridge management including Terry Betteridge, owner of Betteridge, LaPointe and Manjos in November 2012. The morning before the meeting, Terry Betteridge approached Christopherson and patted her on the head, treating her as if she was a pet cat or dog, making her feel very uncomfortable.

27.     In the meeting, Christopherson stated that Win Betteridge was retaliating against her because she had complained to management about his harassment and inappropriate conduct towards her. She also informed management about the "porno" comment made by Win Betteridge in her presence and other's. In addition, Christopherson confirmed she did not want to lose any of her current job duties,

including web work. In response to reporting this harassing and abusive conduct, Lieman told Christopherson to lay low and let it blow over.

28. However during this period of time, Win Betteridge instructed other employees not to communicate with Christopherson about projects or give her work assignments. Christopherson was no longer being assigned to edit images in the company newsletter, a job duty she previously held since the beginning of her employment. She was also asked to stop attending to her normal job duties.

29. After the meeting with Terry Betteridge, LaPointe and Manjos, the Company moved Christopherson's desk away from the web team to the buyers/merchandisers area. Many of Christopherson's job duties were officially taken away, and the Company allowed Win Betteridge to demote her and reassign her job duties.

30. Christopherson was then tasked with taking pictures for Betteridge's internal stocking system. This position was unrelated to her qualifications and to the job duties that she had been hired to perform. Christopherson expressed her belief to Betteridge that she was being punished for complaining about Win Betteridge's conduct towards her and that her creative role was being taken away.

31. Shortly thereafter, Christopherson was told by another employee that Win Betteridge was going to fire her, which was extremely upsetting to Christopherson. Christopherson again corresponded with management and complained about being harassed and retaliated against by Win Betteridge for complaining about his conduct towards her.

32.     In response, Terry Betteridge stated in an email to Christopherson on November 30, 2012 that "what happened between you and Win is over." Nonetheless, Christopherson was not returned to the position for which she had been hired, nor were any of the job responsibilities she had been stripped of restored.

33.     On December 6, 2012, Betteridge hosted a holiday party at Stamford Motors in Stamford, Connecticut. While Christopherson was working in the coat room as an employee for Betteridge, Win Betteridge's mother, Perry Johnston ("Johnston"), approached her.

34.     Johnston confronted Christopherson and asked her if she was Jenny. Christopherson confirmed her identity, and Johnston proceeded to ask if she was the one accusing her son of sexual harassment. Christopherson responded that she was working and that it was not the place to discuss that matter.

35.     Johnston then approached Christopherson in a threatening manner, put her hands on Christopherson's shoulder and pushed her backwards. A Stamford police officer working an extra duty job at the party spoke to both Johnston and Christopherson shortly after this incident and filed a report with the Stamford Police Department concerning it. The officer also contacted two witnesses to the incident, both of whom corroborated Christopherson's description of the assault.

36.     After the incident at Stamford Motors, Betteridge did not assign Christopherson to her previous job duties that management had taken away after she complained about Win Betteridge's conduct to the Company. In addition, Christopherson asked Betteridge managers on several occasions if she could work on web related projects as she did in the past, but her requests were ignored.

37.    During the course of her employment at Betteridge, Christopherson also was subjected to derogatory comments and treated differently than other employees. In one instance Terry Betteridge spoke to a group of employees, mocking Christopherson's level of intelligence. Terry Betteridge informed his employees that they should teach Christopherson how to take pictures because even someone with average intelligence could do it.

38.    After complaining about sexual harassment to Betteridge, Christopherson was given assignments that involved her working in close proximity to, and in some instances in the same room as, her harasser, Win Betteridge.

39.    Christopherson also was given tasks to organize and take photographs of inventory which was located in a "shed" where she would be isolated and alone. These tasks were in no way connected to her job description.

40.    Christopherson expressed her concerns to LaPointe that she was extremely uncomfortable that Win Betteridge would be in the same room or on the same floor with her. In response, LaPointe promised to have the items she needed to work with moved out of the room or floor where Win Betteridge was located.

41.    Moments after the exchange with LaPointe, Terry Betteridge, Win Betteridge's father, began walking around the office with a gun in his hands, putting Christopherson in fear for her personal safety.

42.    Christopherson immediately emailed LaPointe to voice her concerns for her safety, but these concerns were dismissed, and she was told that she was greatly exaggerating the incident.

43.     Moments later, an email was sent company-wide to all employees from Terry Betteridge stating that he had been informed minutes before that one of the staff had disclosed that they were uncomfortable with guns. Terry Betteridge's solution in this email was to ask that all employees make sure his office door was close to so that the guns would not be in view. No other action was taken by Betteridge.

44.     As a result of the sexual harassment, derogatory comments directed towards her, alienation from her team, being singled out and blamed for situations over which she has absolutely no control and/or authority, as well as her fear for her own personal safety, Christopherson began to experience unrelenting feelings of anxiousness at work. Christopherson was unable to sleep at night and could not speak to anyone about her concerns at Betteridge because of previous retaliation against her.

45.     As further result of the intolerable and hostile work environment and the retaliation she was subjected to at Betteridge, Christopherson had no choice but to leave her employment on October 3, 2013.

46.     As a result of the harassment and abuse Christopherson was subject to during her employment at Betteridge, she has suffered from anxiety, stress, lack of energy, weight fluctuations, and sleeplessness. Her mental health and her psychological and physical well-being have been harmed as a result of the harassment and other inappropriate conduct she experienced at Betteridge to the point that she received psychotherapy for several months.

## COUNT I

## HOSTILE WORK ENVIRONMENT UNDER
## TITLE VII – AS TO DEFENDANT BETTERIDGE

47.     Christopherson repeats and realleges paragraphs 1 through 46, above, as if fully set forth herein.

48.     On a regular basis, Christopherson was subject to inappropriate and unwanted sexual or sexually charged language and conduct during her employment at Betteridge.  Through this pervasive, severe and gender-based conduct, Betteridge was promoting an abusive employment environment for Christopherson, subjecting her to harassment, altering the conditions of her employment and interfering with her work performance.

49.     Christopherson was offended by the harassment, which would be equally offensive to a reasonable person.  Christopherson complained about the harassment to her superiors and various members of Betteridge management.  Betteridge undertook no meaningful corrective action despite these complaints.

50.     Betteridge thereby violated Title VII of the Civil Rights Act of 1964, as amended, by subjecting Christopherson to a hostile employment environment on the basis of her gender.

51.     As a result of the violations alleged above, Christopherson suffered emotional distress, pain and suffering, mental anguish and loss of life's enjoyment.  Upon information and belief, Christopherson will continue to suffer from such damages.

52.     The violations alleged above were carried out with malice and/or reckless indifference to Christopherson's federally protected rights.  Accordingly, Christopherson puts Betteridge *on notice* that she is seeking punitive damages.

## COUNT II

### HOSTILE WORK ENVIRONMENT UNDER
### CFEPA- AS TO DEFENDANT BETTERIDGE

53.     Christopherson repeats and realleges paragraphs 1-46, above, as if fully set forth herein.

54.     On a regular basis, Christopherson was subject to inappropriate and unwanted sexual or sexually charged language and conduct during her employment at Betteridge. Through this pervasive, severe and gender-based conduct, Betteridge was promoting an abusive employment environment for Christopherson subjecting her to harassment, altering the conditions of her employment and interfering with her work performance.

55.     Christopherson was offended by the harassment, which would be equally offensive to a reasonable person. Christopherson complained about the harassment to her superiors and various members of Betteridge's management. Betteridge undertook no meaningful corrective action despite these complaints.

56.     Betteridge thereby violated Connecticut General Statutes § 46a-60(a) by subjecting Christopherson to a hostile employment environment based upon her gender.

57.     As a result of the violations alleged above, Christopherson suffered emotional distress, pain and suffering, mental anguish and loss of life's enjoyment. Upon information and belief, Christopherson will continue to suffer from such damages.

58.     The violations alleged above, were carried out with malice and/or reckless indifference to Christopherson rights. Accordingly, Christopherson puts Betteridge *on notice* that she is seeking punitive damages.

## COUNT III

## CONSTRUCTIVE DISCHARGE- AS TO DEFENDANT BETTERIDGE

59.     Christopherson repeats and realleges paragraphs 1 through 46, above, as if fully set forth herein.

60.     Betteridge, through its employees, agents and/or servants, as alleged above, made Christopherson's working conditions so intolerable that she was forced into an involuntary resignation.

61.     The working conditions at Betteridge became so intolerable that a reasonable person in Christopherson's position would have felt compelled to resign.

62.     Christopherson's constructive discharge from her employment with Betteridge, as described above, violated one or more important public policies, including: (a) Title VII of the Civil Rights Act of 1964, as amended; (b) C.G.S. §46a-60(a); and/or (e) judicially conceived notions of public policy.

63.     Because Betteridge constructively discharged Christopherson, Betteridge is liable for all economic loss sustained by Christopherson, including, but not limited to, lost compensation, benefits, and interest.

64.     As a result of her wrongful discharge alleged above, Christopherson suffered emotional distress, anxiety and humiliation.  Upon information and belief, Christopherson will continue to suffer from such damages.

65.     The violations alleged above, were carried out with malice and/or reckless indifference to Christopherson's rights.  Accordingly, Christopherson puts Betteridge *on notice* that she is seeking punitive damages.

## COUNT IV

## RETALIATION UNDER TITLE VII-AS TO DEFENDANT BETTERIDGE

66.     Christopherson repeats and realleges paragraphs 1 through 46, above, as if fully set forth herein.

67.     At all material times, Christopherson opposed the behavior of Betteridge, as alleged above, as discriminatory employment practices. Among other things, the opposition consisted of the Plaintiff notifying Betteridge that the sexual comments, discriminatory behavior, physical contact and advances were offensive and should stop.

68.     At all material times, Christopherson opposed the behavior of Betteridge, as alleged above, as discriminatory employment practices. Among other things, the opposition consisted of the Plaintiff notifying Betteridge of the discriminatory treatment she received on account of her being a woman that the male employees were not subject to.

69.     As a result of the Plaintiff's opposition to the discriminatory employment practices, Defendant Betteridge retaliated against the Plaintiff by removing all of her employment responsibilities and job duties from her and instead provided her with menial tasks which in no way related to her job description.

70.     As a result of the Plaintiff's opposition to the discriminatory employment practices, Defendant Betteridge retaliated against the Plaintiff by forcing her to work in close proximity with Win Betteridge, the subject of her harassment claims, on different projects.

71.     As a result of the Plaintiff's opposition to the discriminatory employment practices, Defendant Betteridge retaliated against her by alienating her from her co-workers and the project teams on which she was previously assigned.

72.     As a result of the Plaintiff's opposition to the discriminatory employment practice, Defendant Betteridge, through its agent, the mother of Win Betteridge, Perry Johnston, retaliated against Christopherson by physically assaulting her at a Company sponsored event in December 2012.

73.     As a result of the Plaintiff's opposition to the discriminatory employment practices, Defendant Betteridge, retaliated against Plaintiff through Terry Betteridge's walking past Plaintiff's desk while carrying a gun moments after Plaintiff has complained about discriminatory actions being taken against her.

**COUNT V**

**RETALIATION UNDER CFEPA-AS TO DEFENDANT BETTERIDGE**

74.     Christopherson repeats and realleges paragraphs 1 through 46, above, as if fully set forth herein.

75.     At all material times, Christopherson opposed the behavior of Betteridge, as alleged above, as discriminatory employment practices.  Among other things, the opposition consisted of the Plaintiff notifying Betteridge that the sexual comments, behavior, physical contact and advances were offensive and should stop.

76.     At all material times, Christopherson opposed the behavior of Betteridge, as alleged above, as discriminatory employment practices.  Among other things, the opposition consisted of the Plaintiff notifying Betteridge of the discriminatory treatment

she received on account of her being a woman that the male employees were not subject to.

77.    As a result of the Plaintiff's opposition to the discriminatory employment practices, Defendant Betteridge retaliated against the Plaintiff by removing all of her employment responsibilities and job duties from her and instead provided her with menial tasks which in no way related to her job description.

78.    As a result of the Plaintiff's opposition to the discriminatory employment practices, Defendant Betteridge retaliated against the Plaintiff by forcing her to work in close proximity with Win Betteridge, the subject of her harassment claims, on different projects.

79.    As a result of the Plaintiff's opposition to the discriminatory employment practices, Defendant Betteridge retaliated against her by alienating her from her co-workers and the project teams on which she was previously assigned.

80.    As a result of the Plaintiff's opposition to the discriminatory employment practice, Defendant Betteridge, through its agent and mother of Win Betteridge, Perry Johnston, retaliated against Plaintiff by physically assaulting Christopherson at a Betteridge sponsored event in December 2012.

81.    As a result of the Plaintiff's opposition to the discriminatory employment practices, Defendant Betteridge, retaliated against Plaintiff through Terry Betteridge's walking past Plaintiff's desk while carrying a gun moments after Plaintiff has complained about discriminatory actions being taken against her.

## COUNT VI

## NEGLIGENT SUPERVISION AS TO DEFENDANT BETTERIDGE

82.     Christopherson repeats and realleges paragraphs 1-46, above, as if fully set forth herein.

83.     Christopherson reported to Betteridge on one or more occasions that Win Betteridge was harassing her and engaging in inappropriate conduct.

84.     Betteridge had actual or constructive knowledge of Win Betteridge's behavior and conduct and failed to investigate it, remedy it or prevent future instances of harassment from occurring.

85.     Betteridge had the obligation to supervise Win Betteridge so as to prevent his harassing and retaliatory conduct directed toward Christopherson.

86.     Betteridge's negligent supervision of Win Betteridge was the direct and proximate cause of Christopherson's suffering from a hostile work environment, discrimination, anxiety, stress and humiliation leading to her constructive discharge.

87.     Accordingly, Betteridge is responsible for all economic loss Christopherson sustained, including, but not limited to, back pay and lost interest.

88.     As the direct and proximate result of Betteridge's negligent supervision of Win Betteridge, Christopherson suffered from emotional distress, anxiety, and humiliation.  Upon information and belief, Christopherson will continue to suffer from such damages.

89.     The negligent supervision alleged above is so egregious and Betteridge's actions were carried out with such malice and/or reckless indifference to Christopherson's rights, that Betteridge is liable for punitive damages under applicable

law and is hereby put on notice that Christopherson requests such damages, as echoed in the Wherefore claim herein.

## COUNT VII

### ASSAULT-AS TO DEFENDANT PERRY JOHNSTON

90.     Christopherson repeats and realleges paragraphs 1-46, above, as if fully set forth herein.

91.     On or about December 16, 2012 Plaintiff was working in the coat room as an employee for Defendant Betteridge at a Betteridge sponsored holiday party taking place at Stamford Motors, in Stamford, Connecticut.

92.     Defendant Johnson confronted Plaintiff and asked her if she was Jenny. Upon Plaintiff's confirmation of her identity, Johnston asked her if she was the one accusing her son, Win Betteridge, of sexual harassment.

93.     Plaintiff responded stating that as she was working, it was not the appropriate time to discuss that topic.

94.     Defendant Johnston then approached Plaintiff in a threatening manner, which placed Plaintiff in the imminent apprehension of harmful or offensive contact.

95.     Plaintiff reasonably believed that Johnson's approach in a threatening manner would result in harmful or offensive contact which would have caused her physical pain or offense to her personal dignity.

96.     Defendant Johnston intended such approach towards Plaintiff to cause immediate apprehension of a harmful of offensive contact with her.

97.     As the direct and proximate result of Defendant Johnston's intentional causing of imminent apprehension on the part of Plaintiff of harmful or offensive contact

by Johnson, Plaintiff suffered from emotional distress, anxiety, and humiliation. Upon information and belief, Plaintiff will continue to suffer from such damages.

**COUNT VIII**

**BATTERY-AS TO DEFENDANT PERRY JOHNSTON**

98.     Christopherson repeats and realleges paragraphs 1-46, and 91-97 above, as if fully set forth herein.

99.     Defendant Johnson confronted Plaintiff and asked her if she was Jenny. Upon Plaintiff's confirmation, Defendant Johnston asked her if she was the one accusing her son, Win Betteridge, or sexual harassment.

100.    Plaintiff responded stating that as she was working, it was not the appropriate time to discuss that topic.

101.    Defendant Johnston then approached Plaintiff in a threatening manner and made physical contact with Plaintiff, pushing her backwards. Such physical contact by Defendant Johnston caused immediate physical pain to Christopherson as well an immediate offense to her dignity.

102.    Such physical pain and offense to Plaintiff's dignity were the immediate and direct consequence of Defendant Perry Johnston's intentional physical contact with Plaintiff.

103.    Defendant Johnston intended such physical contact with Plaintiff to cause immediate physical hard or immediate offense to Plaintiff's dignity.

104.    As the direct and proximate result of Defendant Johnston's intentional physical contact with Plaintiff, Plaintiff suffered from emotional distress, anxiety, and humiliation. Upon information and belief, Plaintiff will continue to suffer such damages.

**WHEREFORE,** Plaintiff demands judgment as follows:

A.     On the First Count against Defendant Betteridge, judgment against Defendant Betteridge as follows:

      1.     Compensatory Damages;

      2.     Punitive Damages;

      3.     Costs and interest;

      4.     Attorney's Fees; and

      5.     Such other relief as the Court deems just and proper.

B.     On the Second Count against Defendant Betteridge, judgment against Defendant Betteridge as follows:

      1.     Compensatory Damages;

      2.     Punitive Damages;

      3.     Costs and interest;

      4.     Attorney's Fees; and

      5.     Such other relief as the Court deems just and proper.

C.     On the Third Count against Defendant Betteridge, judgment against Defendant Betteridge as follows:

      1.     Compensatory Damages;

      2.     Punitive Damages;

      3.     Costs and interest;

      4.     Attorney's Fees; and

      5.     Such other relief as the Court deems just and proper.

D.  On the Fourth Count against Defendant Betteridge, judgment against Defendant Betteridge, as follows:

    1.  Compensatory Damages;

    2.  Punitive Damages;

    3.  Costs and interest;

    4.  Attorney's Fees; and

    5.  Such other relief as the Court deems just and proper.

E.  On the Fifth Count against Defendant Betteridge, judgment against the Defendant Betteridge as follows:

    1.  Compensatory Damages;

    2.  Punitive Damages;

    3.  Costs and interest;

    4.  Attorney's Fees; and

    5.  Such other relief as the Court deems just and proper.

F.  On the Sixth Count against Defendant Betteridge, judgment against Defendant Betteridge as follows:

    1.  Compensatory Damages;

    2.  Punitive Damages;

    3.  Costs and interest;

    4.  Attorney's Fees; and

    5.  Such other relief as the Court deems just and proper.

G.  On the Seventh Count, against Defendant Perry Johnston, judgment against Defendant Johnston as follows:

1. Compensatory Damages

2. Costs and Interest

3. Attorney's Fees; and

4. Such other relief as the Court deems just and proper.

H. On the Eighth Count, against Defendant Perry Johnston, judgment against Defendant Johnston as follows:

1. Compensatory Damages

2. Costs and Interest

3. Attorney's Fees; and

4. Such other relief as the Court deems just and proper.

Respectfully Submitted,

Maya Murphy, P. C.

By: _____
Thomas Moyher (CT 29459)
Attorneys for the Plaintiff
266 Post Road East
Westport, CT 06880
Tel. (203) 221-3100
Fax (203) 221-3199
tmoyher@mayalaw.com

# EXHIBIT A

Jenny Christopherson
**COMPLAINANT**

CHRO No. 1320280

vs.

Betteridge Jewelers Inc.
**RESPONDENT**

EEOC No. 16A-2013-00518

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

August 4, 2014
DATE

Tanya A. Hughes, Executive Director

cc:   Thomas W. Moyher, Esq., via email: tmoyher@mayalaw.com
      John Lloyd Anner, Esq., via email: jlanner@sapmlaw.com

EXHIBIT B

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Jenny Christopherson<br>111 Reef Rd<br>Fairfield, CT 06824 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2013-00518 | Anne R. Giantonio,<br>Intake Supervisor | (617) 565-3189 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**AUG 0 7 2014**

Enclosures(s)

*(Date Mailed)*

Feng K. An,
**Area Office Director**

cc:

BETTERIDGE JEWELERS
117 Greenwich Ave
Greenwich, CT 06830

Thomas W. Moyher
MAYA MURPHY PC
266 post road east
Westport, CT 06880